**No. 24-10095-P (Capital Case)**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

KENNETH EUGENE SMITH,

Plaintiff-Appellant,

v.

COMMISSIONER, ALABAMA DEPARTMENT
OF CORRECTIONS, and WARDEN,
HOLMAN CORRECTIONAL FACILITY,

Defendants-Appellees.

_____

On Appeal from the United States District Court for the Middle District of
Alabama (Northern Division) No. 2:23-cv-00656 (Hon. R. Austin Huffaker, Jr.)

_____

## PLAINTIFF-APPELLANT KENNETH SMITH'S EMERGENCY MOTION FOR STAY OF EXECUTION[1]

_____

Robert M. Grass
**ARNOLD & PORTER KAYE
  SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: 212-836-8000
Facsimile: 212-636-8689
robert.grass@arnoldporter.com

Andrew B. Johnson
**BRADLEY ARANT BOULT
  CUMMINGS LLP**
1819 Fifth Avenue North
Birmingham, AL 35103-2104
Telephone: 205-521-8000
Facsimile: 205-521-8800
ajohnson@bradley.com

_Counsel for Plaintiff-Appellant Kenneth Eugene Smith_

_____

[1] The "time frame" for Mr. Smith's execution begins at 12:00 a.m. on January 25, 2024. Pursuant to Eleventh Circuit R. 27-1(b)(2), Mr. Smith requests that the Court rule as soon as reasonably possible.

**Appeal No. 24-10095-P**

**CERTIFICATE OF INTERESTED PERSONS**

Undersigned counsel certify that the following persons may have an interest

in the outcome of this case:

1.    Alverson, Gary W. - Counsel for the State of Alabama at trial;

2.    Anderson, Kathryn D. - Counsel for the State of Alabama on direct appeal;

3.    Anderson, Richard D. - Counsel for the Respondents during federal habeas proceedings and for Defendants-Appellees below;

4.    Bahakel, Alfred - Retired Circuit Judge of Jefferson County

5.    Bearden, Joshua S. - Counsel for the State of Alabama during Rule 32 proceedings;

6.    Burkett, Ashley - Counsel for Mr. Smith;

7.    Ciliberti, Angelique A. - Counsel for Mr. Smith;

8.    Dunn, Jefferson S. - Former Commissioner of the Alabama Department of Corrections;

9.    Forrester, Nathan A. - Counsel for the State of Alabama on direct appeal;

10.    Grass, Robert M. - Counsel for Mr. Smith

11.    Hamm, John Q. - Commissioner of the Alabama Department of Corrections and Defendant-Appellee;

12.    Hammonds, Tina Coker - Counsel for the State of Alabama during Rule 32 proceedings and for Respondents during federal habeas proceedings;

13.    Hensley III, John Coleman - Counsel for Defendants-Appellees below;

14.    Horowitz, Jeffrey H. - Counsel for Mr. Smith;

C-1

15. Huffaker, Jr., The Honorable R. Austin - United States District Judge for the Middle District of Alabama;

16. Hughes, Beth Jackson - Counsel for the State of Alabama on direct appeal and for Defendants-Appellees below;

17. Johnson, Andrew B. - Counsel for Mr. Smith;

18. Johnson, Christopher M. - Counsel for Mr. Smith at trial;

19. Johnson, Henry M. - Counsel for the State of Alabama on direct appeal and for Defendants-Appellees below;

20. Kallon, Abdul K. - Retired United States District Judge for the Northern District of Alabama;

21. Kenny, Polly Spencer - Counsel for Defendants-Appellees below;

22. Kerschner, David A. - Counsel for Mr. Smith;

23. King, Troy - Former Alabama Attorney General;

24. Marshall, Steve - Alabama Attorney General;

25. Martin, George - Counsel for the State of Alabama on direct appeal;

26. Monk III, Richard H. - Counsel for Mr. Smith during Rule 32 proceedings;

27. Newsom, The Honorable Kevin C. - Former Alabama Solicitor General;

28. Norby, Charlotta - Counsel for Mr. Smith at trial and on direct appeal;

29. Nunnelly, Michael A. - Counsel for the State of Alabama during Rule 32 proceedings;

30. Parker, John Forrest - Co-Defendant;

31. Pryor, Jr., The Honorable William H. - Former Alabama Attorney General;

C-2

32.  Raybon, Terry – Warden, William C. Holman Correctional Facility and Defendant-Appellee;

33.  Samberg, Peter - Counsel for Mr. Smith during Rule 32 proceedings;

34.  Sennett, Charles - Co-Defendant;

35.  Sennett, Elizabeth Dorlene - Victim;

36.  Sharp, Jr., William G. - Former Commissioner of the Alabama Department of Corrections;

37.  Shelton, Jordan Shay - Counsel for Defendants-Appellees below;

38.  Singleton, Palmer - Counsel for Mr. Smith at trial and on direct appeal;

39.  Smith, Kenneth Eugene - Plaintiff-Appellant;

40.  Tompkins, The Honorable N. Pride - Retired Circuit Judge of Colbert County;

41.  Williams, Billy Gray - Co-Defendant.

No publicly traded company or corporation has an interest in the outcome of this appeal.

## **INTRODUCTION**

The Alabama Department of Corrections (ADOC) intends to execute Kenneth Eugene Smith during a time frame that begins at 12:00 a.m. on January 25, 2024. *See* DE 62-41. It intends to do so using nitrogen hypoxia—a method that has never been attempted by any State or the federal government—using procedures set forth in a protocol that has never been tested. It will be the second time ADOC has attempted to execute Mr. Smith, having already subjected him to cruelty and pain when it tried and failed to execute him by lethal injection in November 2022.

Mr. Smith first learned that he would be executed by nitrogen hypoxia on August 25, 2023, when the State moved in the Alabama Supreme Court for authority to execute him by that method. That same day, ADOC released to the public and Mr. Smith a heavily-redacted version of the Lethal Injection Protocol it intends to use during the execution. Five days later, Mr. Smith's counsel requested an unredacted version of the Protocol so that he could make a complete assessment of how ADOC planned to carry out his execution. ADOC refused. Mr. Smith nevertheless investigated what was readable and filed the instant action on November 8, 2023. On November 20, 2023, he filed a preliminary injunction motion supported by expert declarations and other evidence. He did not receive an unredacted version of the Protocol until November 22, 2023, after the district court ordered that it be produced.

1

Given ADOC's decision to release its novel and highly-redacted Protocol on the same day it moved to set Mr. Smith's execution, as well as its months-long refusal to provide an unredacted version, Mr. Smith was forced to complete discovery and present his evidence about ADOC's novel Protocol in an extremely condensed time frame. Thus, the exigent nature of this appeal is of ADOC's own making. Mr. Smith nevertheless presented evidence in support of his preliminary injunction motion showing that he is likely to succeed on his claims that ADOC's planned execution by nitrogen hypoxia will violate his constitutional rights.

**First**, Mr. Smith is likely to succeed on his claim that the execution will violate his Fourteenth Amendment Equal Protection rights because he has not exhausted his appeal from the dismissal of a postconviction petition arising out of the State's previous, failed attempt to execute him when similarly situated condemned people are not subject to execution under those circumstances. The State's plan to execute Mr. Smith violates the State's custom to wait until a person's conventional appeals are exhausted before an execution date is set, and was a transparent effort to moot Mr. Smith's then-pending litigation and discovery requests related to the previous failed execution attempt.

**Second**, Mr. Smith is likely to succeed on his Eighth Amendment claim because he has demonstrated that ADOC's planned use of a one-size-fits-all mask creates a substantial risk that he will be left in a persistent vegetative state,

2

experience a stroke, or asphyxiate on his own vomit. Feasible and readily available alternatives—including a hood or closed chamber system for nitrogen hypoxia, or, in the alternative, the firing squad—would significantly reduce those risks.

*Third*, Mr. Smith is likely to succeed on his claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*., and Alabama Religious Freedom Amendment ("ARFA"), Ala. Const. art. I, § 3.01(V), because ADOC's Protocol puts Mr. Smith to the untenable choice of either engaging in audible prayer while wearing the one-sit-fits-all mask, and inviting the risks identified above, or abstaining from audible prayer.

The district court abused its discretion in denying Mr. Smith's request for a preliminary injunction. Mr. Smith therefore requests that this Court enter an order staying his execution until such time as his claims can be fully adjudicated before the district court—claims that he has diligently pursued since learning of ADOC's Protocol and its intent to execute him using its nitrogen hypoxia procedures.

## BACKGROUND

On November 17, 2022, ADOC attempted, but failed, to execute Mr. Smith by lethal injection. It went forward with that attempt despite this Court having held, just hours earlier, that Mr. Smith had "plausibly pleaded that, considering ADOC's inability to establish difficult IVs swiftly and successfully in the past, he will face superadded pain as the execution team attempts to gain IV access." *See Smith v.*

3

*Hamm*, No. 22-13781, 2022 WL 17069492, at *5 (11th Cir. Nov. 17, 2022) (per curiam).  During that attempt, Mr. Smith was strapped to a gurney for nearly four hours, including for about two hours while—unbeknownst to Mr. Smith—a stay that this Court had entered was in effect.  *See* DE 62-25 at ¶¶ 154-61.  After the Supreme Court vacated this Court's stay, *Hamm v. Smith*, 143 S. Ct. 440 (2022), unidentified men unsuccessfully searched for veins in Mr. Smith's arms, hands, feet, and collarbone, causing great pain.  *See* DE 62-25 at ¶¶ 180-88.  ADOC aborted its attempt before midnight.  *Id.* ¶¶ 217-220.

In December 2022, Mr. Smith filed an amended complaint to enjoin the state from any further attempts to execute him by lethal injection ("the Lethal Injection Action").  *See id*.  That same month, he also served discovery requests on ADOC about the failed execution attempt.  *See Smith v. Hamm*, No. 2:22-cv-00497, DE 80 (M.D. Ala.).  For the next nine months, ADOC avoided responding to those requests by moving to dismiss Mr. Smith's operative complaint, despite this Court having already held that Mr. Smith stated a plausible Eighth Amendment claim.  *Smith v. Hamm*, No. 2:22-cv-00497, DE 78, 80, 95, 97, 100 (M.D. Ala.).  Commissioner Hamm also filed a petition for a writ of certiorari in the Supreme Court challenging this Court's holding that Mr. Smith had plausibly alleged that nitrogen hypoxia is an available alternative method of execution because, according to ADOC, "nitrogen

hypoxia remains unavailable as a matter of fact." *Hamm v. Smith,* No. 22-580, Petition for a Writ of Certiorari at 10 (Dec. 20, 2022).

In May 2023, the Supreme Court denied Commissioner Hamm's petition for certiorari. *See Hamm v. Smith*, 143 S. Ct. 1188 (2023). And in July 2023, the district court denied the motion to dismiss Mr. Smith's Eighth Amendment claim. *Smith v. Hamm*, No. 2:22-cv-497, 2023 WL 4353143 (M.D. Ala. Jul. 5, 2023). With that ruling, Defendants no longer had any basis to avoid discovery into their failed execution attempt.

Then on August 25, 2023—just days before initial disclosures and Defendants' discovery responses were due in the Lethal Injection Action—the State suddenly changed course. *See* DE 67 at 112:13-22; DE 62-37 at ¶ 1; *Smith v. Hamm*, No. 2:22-cv-497, DE 108 at 10 (M.D. Ala.). On that day, the State moved in the Alabama Supreme Court for authority to execute Mr. Smith by nitrogen hypoxia. DE 62-27. It simultaneously moved to dismiss Mr. Smith's lethal injection action as moot, representing that "Defendant Hamm has determined that nitrogen hypoxia is an available method of execution" and "under the unique circumstances of this case, Defendant Hamm has determined that lethal injection is not available as to Plaintiff . . . ." DE 62-42 at ¶ 3. That motion was granted, and Defendants were permanently enjoined from executing Mr. Smith by lethal injection. *See Smith v. Hamm*, No. 2:22-cv-00497, DE 112 (M.D. Ala.).

5

Mr. Smith first learned that he would be subject to execution by nitrogen hypoxia on August 25, 2023, the same day the State filed its motion in the Alabama Supreme Court for authority to execute him.  DE 62-27; 62-42.  The effort to execute Mr. Smith was contrary to a "custom" in Alabama to "wait[] to move for an inmate's execution until he has exhausted his conventional appeals: direct appeal, state postconviction, and federal habeas."  DE 44-4 at 4 (quoted in *Woods v. Comm'r, Ala. Dep't of Corr.*, 951 F.3d 1288, 1291 (11th Cir. 2020)).  When the State moved to set Mr. Smith's second execution date, he had a pending Rule 32 petition in Alabama state court arising from ADOC's previous failed execution attempt.  *See* DE 62-46.  That Petition alleged that a second attempt to execute him would violate the Eighth Amendment to the U.S. Constitution and the analogous provision of the Alabama Constitution because it would follow a "a series of abortive [execution] attempts . . . or . . . a single cruelly willful attempt."  *State of La. ex rel. Francis v. Resweber*, 329 U.S. 459, 471 (1947) (Frankfurter, J., concurring).[2]

August 25, 2023 was also the day that ADOC first released—to the public and Mr. Smith—a heavily-redacted version of its Protocol for executions by nitrogen

---

[2] Mr. Smith's Petition was dismissed on August 11.  Since then, the Alabama Court of Criminal Appeals affirmed, and the Alabama Supreme Court denied a petition for certiorari on January 12, 2024.  *Smith v. State*, __ So. 3d __, 2023 WL 8506490 (Ala. Crim. App. 2023); *Ex parte Kenneth Eugene Smith*, __ So. 3d __, 2024 WL 133084 (Ala. 2024).  Mr. Smith intends to file a petition for certiorari in the Supreme Court.

hypoxia. *See Smith v. Hamm*, No. 2:22-cv-00497, DE 104 (M.D. Ala.). Five days later, Mr. Smith requested that ADOC provide an unredacted copy of the Protocol so that he could make a "complete assessment of how the Department plan[ned] to carry out his execution by nitrogen hypoxia." DE 31-2 at 4. Defendants refused. *See id.*

Mr. Smith, through counsel, began reviewing and investigating the Protocol upon receiving it, a task made far more difficult by the redactions and Defendants' refusal to provide an unredacted version. *See* DE 44-1 at 3:6-24; 4:5-13. On November 1, the Alabama Supreme Court granted the State's motion to execute Mr. Smith. On November 8, Governor Ivey "set a thirty-hour time frame for the execution to occur beginning at 12:00 a.m. on Thursday, January 25, 2024, and expiring at 6:00 a.m. on Friday, January 26, 2024." DE 62-41.

That same day, Mr. Smith filed the instant action in the district court. *See* DE 1. Through his complaint, Mr. Smith sought a declaration and a corresponding injunction that attempting to execute him under the nitrogen hypoxia protocol would (1) violate his right to equal protection under the Fourteenth Amendment; (2) violate his right to be free from cruel and unusual punishment under the Eighth Amendment; (3) violate his right to free speech and the free exercise of religion under the First Amendment; (4) substantially burden his right to exercise his religion under RLUIPA; and (5) burden his right to exercise his religion under ARFA. (*See* DE 31

7

at ¶¶ 104–45.)  As to the Eighth Amendment claim, Mr. Smith alleged that there are feasible and available alternatives to executing him by nitrogen hypoxia using the Protocol, including "amend[ing] the Protocol to cure its deficiencies" by, among other things, "us[ing] a closed space or a hood" instead of a mask to supply nitrogen or alternatively, using a firing squad.  *See id.* at ¶ 102-03.

On November 20, 2023, Mr. Smith moved for a preliminary injunction on all but his First Amendment claim.  DE 19.  At the same time, he moved for expedited discovery.  *See* DE 20.  The district court permitted the parties to engage in limited discovery by serving up to five document requests, up to five interrogatories, and taking up to three depositions.  *See* DE 28.  After Mr. Smith moved for a preliminary injunction, Defendants moved to dismiss Mr. Smith's claims.  DE 39.

On November 22, 2023, Mr. Smith finally received an unredacted copy of the Protocol after the district court ordered Defendants to produce it.  *See* DE 23.  In written and testimonial discovery, Defendants withheld information concerning the development of the Protocol in the "pre-decisional period" before its adoption on August 25, 2023, on the basis of relevance and the deliberative process privilege.  DE 62-32 at 39:3–14; *see also* DE 20-1; DE 20-2.  In other words, Mr. Smith was denied information about the development of the Protocol and any problems that may have been uncovered.  For example, Mr. Smith was not permitted evidence as to why attorneys for the State represented to a federal court in September 2022 that

the nitrogen hypoxia protocol was completed and ready to be used when in fact, it was not, and would not be released until almost a year later.  DE 67 at 190:11-192:16.

Defendants, meanwhile, produced a declaration from an expert anesthesiologist, Dr. Joseph F. Antognini, who relied on information from the "pre-decisional period" to form his opinions, even as Defendants withheld the same information from Mr. Smith.  *See* DE 62-35 at 12:22-13:19, 21:4-21, 29:23-33:19, 221:1-222:15, 271:16-273:8, 295:5-296:19; DE 62-60 at ¶¶ 18, 24.  Mr. Smith moved to compel Defendants to produce information from the "pre-decisional period."  DE 41.  That motion remains pending before the district court.

On December 20, 2023, the district court held an evidentiary hearing on the preliminary injunction motion.  *See* DE 67.  On January 10, 2024, the district court granted Defendants' motion to dismiss Mr. Smith's Fourteenth Amendment claim, denied that motion as to remainder of Mr. Smith's claims, and denied Mr. Smith's preliminary injunction motion.  DE 69.  For the reasons set forth more fully in Mr. Smith's contemporaneously-filed Appellant's Brief, the district court's decision should be reversed.  Mr. Smith has demonstrated that he is likely to succeed on the merits of his claims, which he has diligently pursued since learning of the State's plan to execute him using the procedures set out in its novel nitrogen hypoxia Protocol.  A stay of execution is therefore appropriate until such time as Mr. Smith's constitutional claims have been fully adjudicated.

9

## STANDARD

A stay of execution is appropriate where the plaintiff can demonstrate that "(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." *Price v. Comm'r, Dept. Corr.*, 920 F.3d 1317, 1323 (11th Cir. 2019) (emphasis removed).

## ARGUMENT

### I.    MR. SMITH IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS.

#### A.    Mr. Smith Is Likely to Succeed on his Fourteenth Amendment Claim.

A plaintiff may successfully allege a violation of his equal protection rights as a "class of one" by showing "that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Unrebutted evidence shows that Mr. Smith is likely to satisfy both elements.

**Disparate treatment.**  The undisputed facts show that Defendants are intentionally treating Mr. Smith differently from similarly-situated condemned people who are subject to execution by nitrogen hypoxia because he still has a pending appeal from the dismissal of a state postconviction petition.

10

As Commissioner Hamm testified, based on his experience, "an inmate wouldn't be up for execution until their appeals had been exhausted." DE 62-32 at 114:2-8; *see also* DE 67 at 119:3-12. Similarly, the State has represented: "As a matter of custom, the State waits to move for an inmate's execution until he has exhausted his conventional appeals: direct appeal, state postconviction, and federal habeas." DE 44-4 at 4 (quoted in *Woods*, 951 F.3d at 1291).

The State violated that custom when it moved in the Alabama Supreme Court for authority to execute Mr. Smith by nitrogen hypoxia in August even though he had an appeal pending from the dismissal of his state postconviction proceeding under Alabama Rule of Criminal Procedure 32, which was filed more than three months *before* the State moved to execute him by nitrogen hypoxia. *See* DE 62-46. That petition asserted a claim based on ADOC's failed attempt to execute him by lethal injection in November 2022, which the State conceded Mr. Smith "could not have raised . . . in his first Rule 32 petition." DE 44-6 at 18.

While the postconviction proceeding was still pending, the State moved for authority to execute Mr. Smith despite his pending appeal, even though twenty-one other condemned people who are subject to execution by nitrogen hypoxia had exhausted their appeals between October 2011 and May 2023, including six who

11

exhausted their appeals more than a decade ago.  *See* Appellant's Br. at 26-27.[3]
Thus, ADOC's plan to execute Mr. Smith while his Rule 32 action based on the
failed execution attempt in November 2022 remains unexhausted treats Mr. Smith
differently than similarly-situated persons subject to execution by nitrogen hypoxia.

   **No rational basis**.   Defendants' plan to execute Mr. Smith despite his
unexhausted appeal is not "rationally related to a legitimate government interest."
*Arthur v. Thomas*, 674 F.3d 1257, 1262 (11th Cir. 2012) (per curiam).  According to
Commissioner Hamm, the determination in August 2023 that lethal injection was
not an available method of execution for Mr. Smith was not based on any medical
examination or ADOC's previous failed attempt to execute Mr. Smith by lethal
injection but instead was based on the advice of counsel (which he declined to
disclose).  DE 67 at 110:20-111:5; DE 62-32 at 108:8-109:14, 111:8-13.   And
Commissioner Hamm could not explain why Mr. Smith will be the first condemned
person to be executed by nitrogen hypoxia even though other condemned people
subject to execution by that method exhausted their appeals years ago.  DE 62-32 at
119:11-23; DE 67 at 118:16-119:2.  But the timing of the Commissioner's sudden

---

[3] Those other individuals had elected nitrogen hypoxia after the Alabama legislature
authorized executions by that method in 2018; because ADOC did not approve a
protocol for executing condemned people by nitrogen hypoxia until August 2023,
those individuals have been in an indefinite hold pattern after their appeals were
exhausted.

about-face on the availability of nitrogen hypoxia for Mr. Smith—on the eve of being required to disclose information about ADOC's failed lethal injection attempt—amply demonstrates the reasoning.  It was a litigation tactic to avoid disclosure of information that Defendants wanted to shield from public scrutiny. That is not a legitimate government interest.

### B.    Mr. Smith Is Likely to Succeed on his Eighth Amendment Claim.

Mr. Smith's execution is likely to violate the Eighth Amendment's prohibition on cruel and unusual punishment.  To prevail, Mr. Smith must (1) show that the method of execution poses "a substantial risk of serious harm" that "prevents [Defendants] from pleading that they were subjectively blameless," and (2) identify an alternative method of execution that is "feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain."  *Price*, 920 F.3d at 1326 (cleaned up).  Mr. Smith is likely to succeed on both elements.

**"Substantial Risk of Serious Harm."**  ADOC's decision to deliver nitrogen gas through a one-size-fits-all mask placed over Mr. Smith's face (DE 62-3 at § X.A.v)—rather than through other feasible and readily available options—creates a substantial risk that Mr. Smith will be left in a persistent vegetative state, experience a stroke, or asphyxiate.  That is so for two reasons.

***First***, there is a substantial risk that oxygen will infiltrate the mask, causing a persistent vegetative state, stroke or suffocation.  It is undisputed that depriving a

13

person of sufficient oxygen can cause dire consequences short of death, including transitioning into a persistent vegetative state, having a stroke, or suffocating. *See* DE 62-52 at 5; DE 67 at 161:14-162:5; DE 62-35 at 81:14-82:5; DE 62-53 at ¶ 13.2. To avoid those consequences, it is critical that a mask used for the purpose of executing a condemned person by nitrogen hypoxia has an airtight seal. *See* DE 62-52 at 9; DE 62-53 at ¶¶ 5.1, 5.2; DE 62-57 at ¶ 4. Otherwise, "entrainment of room air can occur allowing for some oxygen to be inspired," thereby extending the time to unconsciousness and death and risking the dire consequences described above. DE 62-52 at 10; *see also* DE 62-35 at 80:5-81:6; DE 62-33 at 74:14-23, 75:9-18; DE 62-53 at ¶ 5.2.

It is undisputed that many factors can compromise establishing an airtight seal, or dislodge or loosen a previously-established airtight seal, including facial structure, facial hair, obesity, talking, voluntary or involuntary head or facial movements, and changes to facial muscles when a person loses consciousness. *See* Appellant's Br. at 32-33. Indeed, "[t]he use of a sealing facemask has been abandoned" by people willingly using nitrogen or other inert gases to end their lives "because of the significant problems associated with maintaining an air-tight seal." DE 62-53 at ¶ 5.1; *see also* DE 62-57 at ¶ 16. Similarly, a document from ADOC's files, which was prepared for an Oklahoma legislator when that state was considering authorizing nitrogen as a means of execution, confirms that even in the

14

context of assisted suicide, using masks to deliver inert gases has been problematic. *See* Appellant's Br. at 33-35.

ADOC intends to use an off-the-rack, one-size-fits-all mask that is designed for industrial use to supply workers with oxygen and protect them from environmental hazards—not for use in executions to expose condemned people to environmental hazards and deprive them of oxygen—in its planned execution of Mr. Smith. *See* DE 62-28; DE 62-38; DE 62-57 at ¶ 4; DE 67 at 168:6-20. That mask will not solve the problems associated with ensuring that masks maintain an airtight seal. In fact, ADOC has no intention of doing anything to ensure that: "We do not have to have an airtight seal." DE 62-33 at 131:8-23; DE 62-32 at 85:21-86:2. *See also* Appellant's Br. at 35-36.

***Second***, there is a substantial risk that Mr. Smith will be asphyxiated because of the mask. It is undisputed that oxygen deficient environments can cause nausea and vomiting, among other things. *See* DE 62-52 at 5; DE 62-35 at 203:3-10; Appellant's Br. at 36-38. ADOC necessarily intends to place Mr. Smith into an oxygen deficient environment, creating a baseline risk of nausea and vomiting. Moreover, Mr. Smith presented evidence that the inherent risk of nausea and vomiting is exacerbated by Mr. Smith's diagnosed post-traumatic stress disorder from ADOC's failed attempt to execute him last year. DE 62-54 at 3; *see also id.* at

29.[4]  Among other symptoms, Mr. Smith "demonstrated and reported across time several fairly common . . . gastrointestinal symptoms, that can accompany posttraumatic stress," including nausea.   DE 67 at 153:6-22; DE 62-54 at 29.

It is undisputed that a person who vomits into a mask covering their face while laying prone on a gurney is at risk of "chok[ing] on his own vomit."  DE 62-52 at 8; DE 62-35 at 307:16-308:6; DE 67 at 79:20-80:3. According to Defendants' expert, to avoid that outcome, it is imperative to act "the moment you see it" to remove the mask and "turn the whole body and suction out the airway and the mouth to remove the vomit."  DE 62-35 at 308:10-19, 309:13-20; *see also* DE 67 at 163:9-17; DE 62-52 at 8; DE 62-35 at 311:5-17; DE 67 at 69:25-70:7, 163:2-8.

But ADOC will not have suction available to address vomiting.   If a condemned person vomits while breathing air is flowing into the mask, ADOC personnel will remove the mask, place a bite plate in the condemned person's mouth, turn the condemned person's head to the side, and perform a finger sweep to remove vomit from the condemned person's airways.  *See* DE 62-33 at 179:12-180:2.  But "a finger sweep is insufficient to remove the vomit from a patient's airway and suction is required."  DE 62-58 at ¶ 5; DE 62-57 at ¶ 12.  Even worse, if Mr. Smith

---

[4]  Mr. Smith's medical records confirm the conclusion of his expert, clinical psychologist Dr. Katherine Porterfield, that Mr. Smith has PTSD and depression and that the onset of his conditions was in November 2022 after ADOC's failed attempt to execute him.  DE 62-113 at ¶¶ 9-10.

vomits into the mask once the nitrogen has begun to flow, ADOC will not do anything.  DE 62-33 at 180:11-181:7; DE 67 at 88:17-89:1.  In other words, if Mr. Smith vomits once the nitrogen begins to flow, ADOC will let him choke on his own vomit.  *See also* Appellant's Br. at 39-40.

**Alternative Method of Execution.**  The evidence establishes feasible and readily available alternatives that would significantly reduce the substantial risk of superadded pain caused by the use of a mask under ADOC's protocol.  Mr. Smith presented testimony from a medical doctor with expertise in assisted suicides that "[o]ne way to bypass the inherent problems of a facemask is to use a capsule, hood or container."  DE 62-53 at ¶ 14.1.  Delivering nitrogen gas through a hood or in a closed chamber "would address the risks associated with any ingress of oxygen from surrounding air . . . ."  *Id.* at ¶ 14.2.  Defendants did not produce any evidence that either of these alternatives are infeasible or unavailable.  Commissioner Hamm was not aware of anyone at ADOC even considering the use a hood or a closed chamber instead of a mask to deliver the nitrogen gas to condemned people.  *See* DE 67 at 86:19-87:17, 88:6-11, 90:17-25.  *See also* Appellant's Br. at 43-44.

Mr. Smith also has established, through an expert declaration, the existence of another feasible and readily available alternative—firing squad—if Defendants are unable or unwilling to amend the Protocol.  DE 62-55.  Execution by that method would not subject Mr. Smith to the substantial risk of being left in a persistent

17

vegetative state, experiencing a stroke, or asphyxiating on his vomit. *Id.* Defendants did not submit any evidence to rebut Mr. Smith's expert declaration. Thus, as the district court acknowledged, an "'uncontroverted affidavit'" must be "'taken as true.'" DE 69 at 33 (quoting *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976)). *See also* Appellant's Br. at 44-45.

## C.    Mr. Smith Is Likely to Succeed on his RLUIPA and ARFA Claim.

Under RLUIPA, Mr. Smith bears "the initial burden of proving that the Department's . . . policy implicates his religious exercise . . . grounded in a sincerely held religious belief, . . . [and] also . . . that the Department's . . . policy substantially burden[s] that exercise of religion." *Holt v. Hobbs*, 574 U.S. 352, 358 (2015). "Once a plaintiff has made out his initial case under RLUIPA, it is the government that must show its policy 'is the least restrictive means of furthering [a] compelling governmental interest.'" *Ramirez v. Collier*, 595 U.S. 411, 427 (2022).

The district court found that Mr. "Smith carried his burden to show that [his plan to engage in] audible prayer [with his spiritual adviser] is an exercise of his sincere religious belief." DE 69 at 45. But the court concluded that Mr. Smith failed to carry his burden to show that being required to audibly pray while masked would substantially burden his religious exercise by forcing him to choose between praying at the risk of breaking the mask's seal or abstaining from prayer. *Id.* at 45-47. Relying "on the court's analysis of Smith's Eighth Amendment claim," the district

court found it "speculative." *Id.* For the reasons discussed in Section I.B, the district court's finding is clearly erroneous. *See also* Appellant's Br. at 45-47.

Moreover, ARFA differs from RLUIPA only in that ARFA does not require proof that the government "substantially" burdened religious exercise. *See* Ala. Const. art. I, § 3.01(V). Under ARFA, "*any* burden—even an incidental or insubstantial one—suffices to trigger strict scrutiny." *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile, Ala.*, 980 F.3d 821, 840 (11th Cir. 2020). The district court found that Mr. Smith was not likely to succeed on the merits of his ARFA claim because he "has not clearly shown that there is likely to be *any* burden on his ability to audibly pray during his execution." DE 69 at 47. The district court's finding is clearly erroneous for the same reason as his finding as to the RLUIPA claim.

## II. MR. SMITH WILL BE IRREPARABLY INJURED WITHOUT A STAY.

Mr. Smith will be irreparably harmed absent a stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009). There is nothing more final than death. *In re Holladay*, 331 F.3d 1169, 1177 (11th Cir. 2003) ("We consider the irreparability of the injury that petitioner will suffer in the absence of a stay [of execution] to be self-evident."). What Mr. Smith stands to suffer, however, would compound that. Under ADOC's Protocol, Mr. Smith will suffer a needlessly painful execution attempt in violation of his constitutional rights. This injury is irreparable as it "cannot be undone through

19

monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990).

### III. THE THREATENED INJURY TO MR. SMITH OUTWEIGHS THE HARM THAT A STAY WOULD CAUSE DEFENDANTS, AND SUCH RELIEF IS IN THE PUBLIC INTEREST.

The balance of equities weighs heavily in Mr. Smith's favor. "The public interest is served when constitutional rights are protected." *Melendez v. Sec'y, Fla. Dep't of Corrs.*, No. 21-13455, 2022 WL 1124753, at *17 (11th Cir. Apr. 15, 2022) (internal quotation marks and citation omitted). This case involves serious constitutional violations. The State has scheduled Mr. Smith for execution by nitrogen hypoxia despite the facts that (1) Mr. Smith has not exhausted his appeals; (2) the Protocol subjects Mr. Smith to a heightened risk of superadded pain including the painful sensation of suffocation, stroke, or a transition to a persistent vegetative state; and (3) the Protocol places a substantial burden on his religious exercise by inhibiting audible prayer.

There is little research regarding death by nitrogen hypoxia. When the State is considering using a novel form of execution that has never been attempted anywhere, the public has an interest in ensuring the State has researched the method adequately and established procedures to minimize the pain and suffering of the condemned person. It is therefore in the public's interest to ensure Defendants comply with the Constitutional protections afforded to Mr. Smith.

20

To be sure, the State and victims have an interest in carrying out timely executions. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006).  But, in this case, Mr. Smith does not seek an injunction to prevent the State from executing him forever—only from attempting an unconstitutional execution.  Any harm to Defendants is less consequential than the harm Mr. Smith stands to suffer.  After all, "[t]he state will get its man in the end.  In contrast, if persons are put to death in a manner that is determined to be cruel, they suffer injury that can never be undone, and the Constitution suffers an injury that can never be repaired." *Gomez v. U.S. Dist. Ct. for N. Dist. of California*, 966 F.2d 460, 462 (9th Cir. 1992) (Noonan, J., dissenting).

Finally, the need to delay Mr. Smith's execution was caused by a time crunch of Defendants' own making.  Mr. Smith was not informed that the Defendants intended to execute him by nitrogen hypoxia until August 25, 2023, and he has diligently pursued this action ever since. *See supra* at 5-10.

## CONCLUSION

The Court should stay the scheduled execution until such time as Mr. Smith's claims—which raise important questions about a novel method-of-execution and how Mr. Smith was chosen as the test subject for the State's new Protocol—are fully adjudicated.

*/s/ Andrew B. Johnson*
Andrew B. Johnson
**BRADLEY ARANT BOULT**
  **CUMMINGS LLP**
1819 Fifth Avenue North
Birmingham, AL 35103-2104
Telephone:  205-521-8000
Facsimile:  205-521-8800
ajohnson@bradley.com

Robert M. Grass
**ARNOLD & PORTER KAYE**
  **SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone:  212-836-8000
Facsimile:  212-836-8689
robert.grass@arnoldporter.com

Ashley Burkett
**ARNOLD & PORTER KAYE**
  **SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone:  202-942-5000
Facsimile:  202-942-5999
ashley.burkett@arnoldporter.com

22

## <u>CERTIFICATE OF COMPLIANCE</u>

This motion complies with the type-volume litigation of Fed. R. App. P. 27.

This motion contains 5,193 words, excluding the parts of the motion exempted.  This

motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the

type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in

a proportionally spaced typeface using Word, in 14-point Times New Roman font.


*/s/ Andrew B. Johnson*
Andrew B. Johnson

Dated:  January 15, 2024

23

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on January 15, 2024, I filed Plaintiff-Appellant Kenneth Smith's Emergency Motion for Stay of Execution with the Clerk of the Court using the NextGen CM/ECF system, which will automatically send email notification to all counsel of record.


<u>*/s/ Andrew B. Johnson*</u>
Andrew B. Johnson

Dated:  January 15, 2024

24