No. 24-10095-P

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

——————◆——————

KENNETH EUGENE SMITH,
*Plaintiff-Appellant*,

v.

COMMISSIONER, Alabama Department of Corrections, et al.,
*Defendants-Appellees*.

——————◆——————

On Appeal from the United States District Court
for the Middle District of Alabama
Case No. 2:23-CV-00656-RAH

## DEFENDANTS-APPELLEES' BRIEF IN OPPOSITION
## TO EMERGENCY MOTION FOR STAY OF EXECUTION

Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr.
  *Solicitor General*

Robert M. Overing
  *Deputy Solicitor General*

Dylan Mauldin
  *Ass't Solicitor General*

Richard D. Anderson
Beth Hughes
Polly Kenny
Henry Johnson
John Hensley
Jordan Shelton
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
501 Washington Ave.
Montgomery, AL 36130
(334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for Appellees*

January 17, 2024

*Smith v. Commissioner*, No. 24-10095-P

## CERTIFICATE OF INTERESTED PERSONS

In accordance with 11th Cir. R. 26.1-1(a)(3) and 26.1-2(c), undersigned counsel certifies that the certificate of interested persons filed by Appellees on January 12, 2024, is complete.

No publicly traded companies are parties to this case.

*s/ Edmund G. LaCour Jr.*
Edmund G. LaCour Jr.
*Solicitor General*

## STATEMENT REGARDING ORAL ARGUMENT

The Court has scheduled oral argument.

## TABLE OF CONTENTS

Certificate of Interested Persons ................................................................C1

Table of Contents ..................................................................................... ii

Table of Authorities ................................................................................. iv

Background ............................................................................................... 1

Standard of Review ................................................................................... 3

Argument................................................................................................... 4

   I.   Smith's Equal Protection Claim Is Jurisdictionally Barred
       And Fails On the Merits................................................................... 4

       A.   Smith Lacks Standing to Bring His Claim Against These
           Defendants........................................................................... 4

       B.   Smith's Claim Sounds in Habeas and is Jurisdictionally Barred........ 5

       C.   Smith's Claim is Barred by Claim Preclusion, Issue Preclusion,
           and the *Rooker-Feldman* Doctrine..................................... 6

       D.   Smith's Claim Fails on the Merits. ...................................... 7

  II.   Smith's Eighth Amendment Claim Fails. ................................... 8

       A.   Smith's Fears of Oxygen and Vomit Do Not Amount to
           Substantial Risks of Severe Pain.......................................... 9

       B.   Smith Failed to Show a Feasible and Readily Available
           Alternative That Would Significantly Reduce the Alleged Risks. ... 13

           1.   Smith's "hood" and "chamber" proposals are not blueprints
               and would not significantly reduce risk. .......................13

           2.   Smith's firing squad proposal should be barred, and it fails
               on the merits. ...........................................................16

C.   Smith Failed to Show That the State's Method is Deliberately Designed to Inflict Pain........................................................ 18

III.  Smith's RLUIPA and ARFA Claims Fail.................................................. 19

IV.  The Equitable Factors Favor the State. ..................................................... 21

Conclusion ....................................................................................................... 22

Certificate of Compliance ............................................................................... 23

Certificate of Service ...................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Aaron Priv. Clinic Mgmt. LLC v. Berry*,
   912 F.3d 1330 (11th Cir. 2019) ............................................................4

*Alvarez v. Att'y Gen. for Fla.*,
   679 F.3d 1257 (11th Cir. 2012) ............................................................7

*Arthur v. State*,
   71 So. 3d 733 (Ala. Crim. App. 2010)...................................................8

*Barber v. Governor of Alabama*,
   73 F.4th 1306 (11th Cir. 2023) .............................................................4

*Baze v. Rees*,
   553 U.S. 35 (2008)............................................................................... 18

*Bowles v. DeSantis*,
   934 F.3d 1230 (11th Cir. 2019) ............................................................5

*Bucklew v. Precythe*,
   139 S. Ct. 1112 (2019)........................................... 3, 8, 12, 13, 18, 22

*CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*,
   327 F.3d 1309 (11th Cir. 2003) ............................................................6

*DeMoss v. Crain*,
   636 F.3d 145 (5th Cir. 2011) ..............................................................20

*Doe v. Bush*,
   261 F.3d 1037 (11th Cir. 2001) ..........................................................21

*Estelle v. Gamble*,
   429 U.S. 97 (1976)...............................................................................19

*FTC v. On Point Cap. Partners LLC*,
   17 F.4th 1066 (11th Cir. 2021) ............................................................4

iv

*Glossip v. Gross*,
    576 U.S. 863 (2015)............................................................... 8, 12, 18

*Griffin Indus. v. Irvin*,
    496 F.3d 1189 (11th Cir. 2007) ...........................................7

*Hubbard v. Campbell*,
    379 F.3d 1245 (11th Cir. 2004) ...........................................8

*I.A. Durbin, Inc. v. Jefferson Nat. Bank*,
    793 F.2d 1541 (11th Cir. 1986) ...........................................6

*In re Hutcherson*,
    468 F.3d 747 (11th Cir. 2006) ...........................................8

*Jacobson v. Fla. Sec'y of State*,
    974 F.3d 1236 (11th Cir. 2020) ...........................................4

*Nance v. Ward*,
    597 U.S. 159 (2022)................................................... 5, 8, 13, 17

*New Hampshire v. Maine*,
    532 U.S. 742 (2001).............................................................17

*Price v. Comm'r, Dep't of Corr.*,
    920 F.3d 1317 (11th Cir. 2019) ...........................................8

*Respect Maine PAC v. McKee*,
    562 U.S. 996 (2010)...........................................................3

*S.E.L. Maduro (Fla.), Inc. v. M/V Antonio de Gastaneta*,
    833 F.2d 1477 (11th Cir. 1987) ...........................................6

*Smith v. State of Alabama*,
    No. 1000976 (Ala. filed Sept. 22, 2023)...............................6

*Smith v. State*,
    908 So. 2d 273 (Ala. Crim. App. 2000)................................1

*Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama*,
   980 F.3d 821 (11th Cir. 2020) .................................................................. 20, 21

*Tompkins v. Sec'y, Dep't of Corr.*,
   557 F.3d 1257 (11th Cir. 2009) ...........................................................5

*Wilkinson v. Dotson*,
   544 U.S. 74 (2005) .............................................................................5

*Wright v. Lassiter*,
   921 F.3d 413 (4th Cir. 2019) .............................................................21

## Statutes

28 U.S.C. §2244(b)(2) ...............................................................................5

42 C.F.R. §84.135(a) ...............................................................................10

42 U.S.C.A. §2000cc ........................................................................... 20, 21

42 U.S.C.A. §2000cc-1 ...........................................................................20

Ala. Code §13A-5-40(a)(7) .......................................................................1

## BACKGROUND

Kenneth Smith murdered Elizabeth Sennett in a sordid murder-for-hire plot. *Smith v. State*, 908 So. 2d 273, 279-81 (Ala. Crim. App. 2000).[1] He was convicted of murder and sentenced to death. He unsuccessfully sought post-conviction relief in state court and habeas relief in federal court. DE69:3.

After Smith was scheduled to be executed by lethal injection in 2022, he sued and alleged that "nitrogen hypoxia was his preferred method of execution because it was an available and feasible alternative method." DE69:3. Following last-minute litigation that delayed Smith's execution, ADOC was unable to access Smith's veins and called off his execution. DE69:4. Commissioner Hamm ultimately agreed to execute Smith by nitrogen hypoxia instead. DE69:4.

Having received his preferred method of execution, Smith sued again. He pleaded five claims: a Fourteenth Amendment violation based on the timing of his execution, an Eighth Amendment claim alleging risks associated with the mask, and religious rights claims under the First Amendment, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Alabama Religious Freedom Amendment (ARFA). *See* DE31¶¶104-45. He sought injunctive relief based on his Equal Protection claim, his Eighth Amendment claim, and his RLUIPA and ARFA claims.

---

[1] "DE" citations refer to the district court docket entry and ECF pagination where available. Citations to Smith's Opening Brief (Br.), Smith's Emergency Motion for Stay of Execution (Mot.), and witness declarations will refer to the native pagination.

*See* DE19. Following discovery, the district court held a hearing on Smith's motion, receiving over one hundred exhibits, including witness declarations, case reports and articles, and "videos of individuals donning the mask the Defendants intend to use for Smith's execution." DE69:9. The court also "examined in detail" the mask ADOC intends to use. DE69:9 n.3. The court heard live testimony from nearly a dozen witnesses.

The court rejected dismissed Smith's Fourteenth Amendment claim based on Smith's failure to show an injury traceable to the Defendants and based on the merits. DE69:22-26. In short, Smith sued the wrong parties. Turning to Smith's motion, the district court determined that Smith "has failed to show a substantial likelihood of success" on any of his claims. DE69:35.

**1.** The district court found Smith unlikely to succeed on his Eighth Amendment claim because "there is simply not enough evidence to find … [that] the Protocol is substantially likely to cause Smith superadded pain short of death or a prolonged death." DE69:41-42. "Proof of *some* theoretical risk" "does not clear Smith's high hurdle." DE69:43.

At the hearing, the district court "examined in detail" the State's mask. DE69:9 n.3. The court found "it highly unlikely that the mask would dislodge or that the seal would be broken." DE69:41. The mask's "design and fit" enable it to be "tightly secured on the condemned inmate's head in a positive pressure

2

environment." *Id.* The mask "fit[s] a broad range of wearers" with a "tight seal." DE69:40-41, 46.

Smith was "far from providing a feasible, readily implemented alternative," and his firing squad suggestion was "cursory." DE69:43-44.

**2.** The district court found that Smith failed to show any burden on his prayer. Smith claims that praying could "loosen[] the mask," producing "dire consequences." Br.46. But Smith had "little-to-no actual evidence, let alone compelling evidence" that an audible prayer would "dislodge" his mask. DE69:46; *see also* DE69:41. The State, on the other hand, "provided substantial evidence" to the contrary. DE69:46.

## STANDARD OF REVIEW

An emergency injunction pending appeal is an especially extraordinary remedy. Smith asks the Court to enjoin a sovereign State's "enforcement of a presumptively constitutional" sentence, altering "the status quo" by granting "judicial intervention that has been withheld by lower courts." *Respect Maine PAC v. McKee*, 562 U.S. 996 (2010) (Kennedy, J., in chambers). "Last-minute stays should be the extreme exception." *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019).

Smith's motion must clearly show (1) "a *substantial* likelihood of success on the merits," (2) "he *will* suffer irreparable injury unless the injunction or stay issues," (3) "the injunction or stay would not substantially harm the other litigant," and (4)

3

"if issued, the injunction or stay would not be adverse to the public interest." *Barber v. Governor of Alabama*, 73 F.4th 1306, 1317 (11th Cir. 2023).

This Court must accept the district court's factual findings absent "clear error." *FTC v. On Point Cap. Partners LLC*, 17 F.4th 1066, 1078 (11th Cir. 2021).

## ARGUMENT

### I. Smith's Equal Protection Claim Is Jurisdictionally Barred And Fails On the Merits.

Smith's Equal Protection claim fails for numerous reasons, each of which supports affirming the district court's order dismissing Smith's claim. *See Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1335 (11th Cir. 2019).

#### A. Smith Lacks Standing to Bring His Claim Against These Defendants.

To establish standing at the pleadings stage, Smith needed to plausibly allege "(1) an injury in fact that (2) is fairly traceable to the challenged action of the [D]efendant[s] and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020). He failed to do so for his equal protection claim because Smith never alleges "how either Defendant played a role in his selection over other inmates for execution." DE69:24. The challenged actions "to select, move for, or authorize [Smith's] execution … lie with the Attorney General and the Alabama Supreme Court," not the Defendants. DE69:26.

4

Smith's stay motion never addresses the district court's standing holding. *See* Mot.10-13. Thus, his motion fails to show that the holding was in error and that Smith is likely to prevail on his Equal Protection claim.

## B.    Smith's Claim Sounds in Habeas and is Jurisdictionally Barred.

Smith's equal protection claim seeks to "prevent[] the State from executing him," and prevailing on his claim would "necessarily imply the invalidity of" the order authorizing the execution of his sentence. *Nance v. Ward*, 597 U.S. 159 (2022). His claim thus "must proceed in habeas," *id.*, but he brought it under §1983. By seeking a "delay" that, "for its span, is a commutation of a death sentence to one of imprisonment," *Bowles v. DeSantis*, 934 F.3d 1230, 1248 (11th Cir. 2019), Smith challenges his sentence. And, separately, "establishing the basis for" Smith's equal protection "claim necessarily demonstrates the invalidity of the" the Alabama Supreme Court's decision to authorize execution. *Wilkinson v. Dotson*, 544 U.S. 74, 80 (2005).

That means Smith's claim fails. Smith already brought an initial federal habeas petition. *See* DE69:3. "Section 2244(b)(3)(A) requires a district court to dismiss for lack of jurisdiction a second or successive petition for a writ of habeas corpus unless the petitioner has obtained an order authorizing the district court to consider it." *Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1259 (11th Cir. 2009). Smith never obtained such an order. Nor could he under 28 U.S.C. §2244(b)(2).

C.    **Smith's Claim is Barred by Claim Preclusion, Issue Preclusion, and the *Rooker-Feldman* Doctrine.**

Smith's claim also fails because it was rejected by the Alabama Supreme Court. After the Attorney General requested authorization, Smith raised the same equal protection argument he raises here. *See* Smith Oppo. to Alabama's Mot. to Set an Execution Date at 2, 8-9, *Smith v. State of Alabama*, No. 1000976 (Ala. filed Sept. 22, 2023). The court rejected Smith's argument when it authorized his execution and foreclosed the argument here for three reasons.

*Claim preclusion*. Claim preclusion "refers to the preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or could have been litigated in an earlier suit." *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986). Claim preclusion applies because "(1) the first action resulted in a final judgment on the merits, (2) the decision [was] rendered by a court of competent jurisdiction, (3) the parties to both actions, or those in privity with the parties, [were] identical, and (4) the causes of action in both suits [were] identical." *S.E.L. Maduro (Fla.), Inc. v. M/V Antonio de Gastaneta*, 833 F.2d 1477, 1481 (11th Cir. 1987).

*Issue preclusion*. "Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003). The doctrine to applies here because "(1) the issue at stake" here is "identical to the

6

one involved in the prior litigation; (2) the issue [was] actually litigated in the prior suit; (3) the determination of the issue in the prior litigation [was] a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted … had a full and fair opportunity to litigate the issue in the earlier proceeding." *Id.*

**Rooker-Feldman**. "The [*Rooker-Feldman*] doctrine is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012). This Court and the district court lack jurisdiction over the Equal Protection claim because that issue "was inextricably intertwined with the state court judgment so that (1) the success of the federal claim would effectively nullify the state court judgment, or that (2) the federal claim would succeed only to the extent that the state court wrongly decided the issues." *Id.* at 1262-63 (internal quotation marks omitted).

### D.    Smith's Claim Fails on the Merits.

Smith failed to allege facts that would support a class-of-one equal protection claim. To prevail on such a claim, a plaintiff "must demonstrate that [he was] treated differently than someone who is *prima facie identical in all relevant respects*." *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007).

Smith's class of supposedly identical comparators is "other condemned people in Alabama whose appeals have exhausted and who elected to be executed by

nitrogen hypoxia." DE31¶59. But Smith is *not* identical to his comparator class because he "did not elect to be executed by nitrogen hypoxia." DE31¶61. "Because [Smith] did not timely elect the new protocol, he is not similarly situated in all material respects to the inmates who did make such an election within the thirty-day timeframe." *Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1325 (11th Cir. 2019).

Smith's claim also fails because Alabama has executed or sought to execute other inmates even when they have had second or successive postconviction petitions pending. *See, e.g.*, *In re Hutcherson*, 468 F.3d 747 (11th Cir. 2006); *Hubbard v. Campbell*, 379 F.3d 1245 (11th Cir. 2004); *Arthur v. State*, 71 So. 3d 733, 738 (Ala. Crim. App. 2010).

## II.    Smith's Eighth Amendment Claim Fails.

Smith did not show that the State's method "presents a 'substantial risk of serious harm'—severe pain over and above death itself." *Nance*, 597 U.S. at 164 (quoting *Glossip v. Gross*, 576 U.S. 863 (2015). For Smith to win, the alleged harm must be "sure or very likely" to occur. *Glossip*, 576 U.S. at 877. He also failed to prove "an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *Id.* (cleaned up). That alternative must provide "a veritable blueprint for carrying the death sentence out." *Nance*, 597 U.S. at 169. And Smith must show "that the State has refused to adopt [his blueprint] without a legitimate penological reason." *Bucklew*, 139 S. Ct. at 1125.

### A.    Smith's Fears of Oxygen and Vomit Do Not Amount to Substantial Risks of Severe Pain.

**1.** Smith admits that breathing 100% nitrogen gas "would result in … death." Br.31. Nitrogen hypoxia is painless because it causes unconsciousness in seconds, DE62-60¶9, or as Dr. Nitschke put it, "an almost-immediate loss of unconsciousness with death following soon after," DE62-53:§14.1. But the use of any mask, Smith says, creates a substantial risk that oxygen will infiltrate, which, in turn, "creates a substantial risk that Mr. Smith will be left in a persistent vegetative state, experience a stroke, or asphyxiate." *Id.* The district court weighed all the evidence and correctly determined that Smith's fears are "highly theoretical." DE69:42.

Smith assumes without evidence that the mask must have "an airtight seal so that oxygen does not penetrate it." Mot.14. But no method—a mask, a hood, or a hyperbaric chamber—will be 100% airtight. DE62-35 at 59:13-63:20. Dr. Yong testified that doctors "create a tight seal" simply by *holding* a mask to the patient's face. DE62-52:6. The question, then, is not whether there may be some oxygen, but how much oxygen is too much. Smith's evidence did not answer that question, and his expert admitted that "there is a lack of data." *Id.* at 5.

The evidence showed that ADOC's mask is tight enough to prevent a substantial risk. Based on its examination of the mask, the district court stated that it would be "highly unlikely" "that the seal would be broken and outside air introduced" to such a problematic degree. DE69:41. Dr. Antognini called it "virtually air-tight,"

9

DE62-60¶9, producing "minimal" entrainment and "very low oxygen concentrations." DE62-35:119. Given that "the flow rate is so high" and the "volume of the mask" so low, the system will "flush out [any] oxygen pretty quickly." DE62-35:164-65. Dr. Nitschke admitted that the mask was "tight[]," not "loose," and that he could not notice any entrainment of room air. DE62-112:42:12, 41:9, 44:1-3.

Next, Smith argues that his anatomy—facial structure, facial hair, and obesity—or his conduct—talking, bodily movement, and "changes to facial muscles"—will make the mask fit poorly or compromise the fit. Mot.14. But Smith wholly ignores the video evidence of six people wearing the mask and reporting no problems. DE62-72 to 62-77; DE62-70:¶4. And he ignores that ADOC's execution team has practiced fitting the mask to various people. DE62-33 at 252:2-16, 114-15. There is no evidence that a single person had fit problems with the mask.

Smith also ignores that ADOC's mask is a NIOSH-approved Type-C full face-piece supplied air respirator. To receive NIOSH approval under federal law, "full facepieces shall be designed and constructed to fit persons with various facial shapes and sizes either (1) by providing more than one facepiece size; or (2) by providing one facepiece size which will fit varying facial shapes and sizes." 42 C.F.R. §84.135(a).

Dr. Nitschke admits that Smith has no "facial deformities" that might interfere with mask fit and that Smith's concerns about his facial hair are self-imposed

10

because he can simply shave. DE62-112:44:14-17, 45:2-8. Dr. Nitschke also agreed that the mask is "a design which would fit most people effectively." DE62-112:40:15-16. Further, Dr. Nitschke, who himself sports facial hair, detected no entrainment of room air even when he breathed deeply. *Id.* at 42:16-17, 44:1-3.

In the context of mask fit, Smith's reliance on suicide-related evidence (*e.g.*, Mot.14, Br.34) is misplaced. None of Smith's suicide evidence discusses the specific mask ADOC plans to use, which (in contrast to other masks) features a five-point strapping system, DE69:9 n.3, and the Protocol, which involves the intervention of the execution team to adjust and verify proper mask placement, DE62-3:X.A.v.

Smith fails to distinguish the State's evidence of workplace fatalities due to inhaled nitrogen. *See, e.g.*, DE62-96 through DE62-100. Smith simply states that masks are not designed for executions. Mot.15. Unfortunately, that distinction did not matter for the workers who perished because they mistakenly supplied nitrogen to a respirator. *See, e.g.*, DE62-98. And none of Smith's experts presented *a single case* where someone survived exposure to inert gas while wearing a supplied air respirator absent intervention.

**2.** Smith's vomiting scenario relies on a "cascade of unlikely events" (DE69:42): (1) due to his mental condition or the effects of hypoxia, he will develop nausea, (2) his nausea will cause him to vomit, (3) he will vomit precisely after the nitrogen begins flowing but before he becomes unconscious, (4) he will vomit

enough to choke on his vomit, and (5) he will die from choking on his own vomit. The conjunction of these events is not "sure or very likely" to happen, *Glossip*, 576 U.S. at 877, so Smith has not carried his burden.

First, Smith reports chronic nausea (Mot.15-16), yet there is no evidence that he has vomited even one time as a result. DE67:143:16-20, 144:12-14.

Second, Smith's cascade relies on the implausible assumption that he would vomit at a very precise time. None of the workplace fatality reports in the record even listed vomiting as a complication. If Smith vomits at any time other than in the few seconds before unconsciousness, the execution team would remove the mask (if necessary), remove the vomit, and continue the Protocol. DE62-31 at 172:4-19, 179:12-180:2.[2] He has not shown that he is sure to vomit, choke, and experience unconstitutional levels of pain—precisely after nitrogen flows but in the seconds before unconsciousness.

Even if Smith chokes on vomit, he has not argued that it would entail *unconstitutional* pain. Other legal methods involve a risk of choking or even greater pains. *See, e.g.*, *Bucklew*, 139 S. Ct. at 1124 (describing hanging).

---

[2] Smith's position that "suction is required" to prevent anyone who vomits from *dying* (Mot.16) is not supported by the record or human experience.

**B.**  **Smith Failed to Show a Feasible and Readily Available Alternative That Would Significantly Reduce the Alleged Risks.**

Smith's claim requires proof of another "feasible and readily available method … that would have significantly reduced a substantial risk of pain." *Bucklew*, 139 S. Ct. at 1128. Smith's proposal must be "sufficiently detailed"—"a veritable blueprint for carrying the death sentence out." *Nance*, 142 S. Ct. at 2222-23. In the court below, Smith pleaded three types of alternative to the Protocol: (1) other delivery systems, including a "custom fit" mask,[3] "a closed space," or "a hood" (DE31¶102), (2) amendments to the Protocol,[4] and (3) a firing squad. Smith has now abandoned all but the "hood," "chamber," and firing squad alternatives. None satisfy the blueprint requirement, and none came "with evidence to meet his heavy burden." DE69:35. Smith's cursory argument on appeal (Br.43-45) does not rehabilitate his failures below.

**1.**  **Smith's "hood" and "chamber" proposals are not blueprints and would not significantly reduce risk.**

Smith's alternative nitrogen delivery systems are non-starters. Smith's complaint contained a single sentence: "Measure each condemned person … for a

---

[3] Through the hearing, Smith maintained that ADOC should use a sleep apnea mask called "Mojo 2," which has holes designed to leak and is secured by magnets. DE62-102:3, 6; DE62-103.

[4] Smith previously proposed a variety of elliptical amendments unsupported by evidence. It appears that Smith has now abandoned these proposals on appeal. *Compare* DE69:37 n.12 (Smith's "bullet-point list") *with* Br.43-45.

custom fit mask … or, alternatively, use a closed space or a hood." DE31¶102. Having failed to plead and prove a veritable blueprint, Smith attempts to shift the burden: "*Defendants* did not produce any evidence that [his] alternatives are infeasible or unavailable." Br.44 (emphasis added). Wrong. It was *Smith's* burden to prove a feasible and readily available alternative that would significantly reduce risk. He failed.

*a. "A hood."* Smith never specified any characteristics of his proposed hood, leaving many unanswered questions about its design, its material, how it could be secured, whether it's readily available, etc. There is no blueprint, and the hood would not significantly reduce the alleged risks.

First, Defendants introduced substantial evidence showing that inhaling inert gas with a "hood" (or "bag") would less reliably result in death. For example, a case report details how a thirty-year-old man attempted suicide "by inhaling nitrogen gas through a plastic bag" and "lost consciousness for a while," but a "few hours later, he recovered." DE62-87; *see also* DE62-88 (helium); DE62-90 (helium); DE62-89 (argon). In contrast, the only example presented in this litigation where anyone survived inert-gas exposure while wearing a supplied air respirator was rescued by outside actors. DE62-84.

The "hood" method would not eliminate and might exacerbate the risk of breathing oxygen. At the hearing, Dr. Nitschke explained that his hood method works primarily by positive pressure, DE67:126-27, which Smith now says is

14

inadequate, Br.36. Dr. Nitschke also admitted that his hood—which he has personally watched kill dozens of people—is "not a tight fit" and allows a "flow of gas exiting around the neck." DE62-112:30:23, 31:3-4; *accord* DE62-35:59-61. Further, Dr. Nitschke uses a 15-liter-per-minute flow rate, DE62-112:31:6-7, which is far below ADOC's flow rate into a much smaller container (a mask) with a one-way exit valve. *See* DE62-3:X.A.ii; DE62-60:¶10; DE62-35:164.

Second, Dr. Nitschke testified that hypoxia can cause nausea "even in a hood system." DE69:38. Defendants introduced an article reflecting that the cause of death in a suicide by inert gas "was suffocation due to a plastic bag over the head *and aspiration of gastric contents*." DE62-91:2 (emphasis added).

Smith cites Dr. Nitschke's declaration, which was written before he had seen and worn ADOC's five-point rubber headgear with a double-flanged seal. Dr. Nitschke's suicide method requires the wearer to pull the bag around the top of his head, wait for it to inflate, exhale deeply, pull the bag down over his head, cinch the elastic collar, and inhale deeply. DE62-112:30:9-14. Neither Smith nor Dr. Nitschke proved how that procedure could be adapted for an execution or why it would be superior if Smith "is uncooperative." Br.43.

***b. "A closed space" or "chamber."*** While Drs. Yong and Nitschke discussed enclosures or chambers in the abstract, Smith did not prove that it would be feasible and readily available to ADOC. There are many unanswered questions, including

15

how large a chamber would be needed to be to conduct a nitrogen hypoxia execution, how it would be sealed, how it would permit a final statement and prayer, how it would permit witnesses, how it would permit ADOC's intervention during the execution if necessary, and how it would operate safely. Given that chambers are not used for anesthesia, Dr. Yong had no idea what such a chamber would be like and refused to hypothesize. DE67:70-71. But these considerations are material and critical because the volume of nitrogen gas required to fill such an enclosure would have to be vented into the environment after the execution—*inside a maximum-security correctional facility.*

Smith also failed to show that a "closed space" or chamber" would significantly reduce the alleged risks. As to the risks of oxygen, Smith did not detail what flow rate or volume of nitrogen would be required to displace breathing air quickly enough that it would not prolong life or cause the "dire consequences short of death" he fears. DE19:27. As to the risks of vomiting, Smith presented no evidence explaining how restraining him and placing him inside a sealed enclosure would make it *easier* for ADOC officials to respond and render aid if he were to vomit (or suffer any other complication requiring intervention),

### 2. Smith's firing squad proposal should be barred, and it fails on the merits.

**a.** Judicial estoppel and claim preclusion bar Smith's new firing squad alternative because he *repeatedly* demanded relief from lethal injection on the promise

16

that he preferred nitrogen hypoxia and that it was constitutional, feasible, and readily available. DE39-1:¶¶54, 85, 87, 95; DE39-2:17-18; DE39-3:15; DE39-4:¶¶24, 26, 95; DE39-5:¶¶14, 74; DE39-6:21; DE39-7:¶¶250, 251, 264; DE39-8:8. This Court ought not "for a moment countenance" his contradictory stance, which is designed "to forestall [his] execution." *Nance*, 597 U.S. at 174. Smith now calls nitrogen hypoxia "novel" and "experimental." But if he had genuine concerns, he needed to plead them in his prior §1983 case to give the State a "pathway forward." *Id.* at 169.

Judicial estoppel is one "useful tool for identifying inmates who are more interested in delaying their executions than in avoiding unnecessary pain." *Middlebrooks v. Parker*, 22 F.4th 621, 628 (6th Cir. 2022). To accept that firing squad is *really* Smith's preferred method would create "the perception that either the first or second court was misled." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

**b.** Compared to nitrogen hypoxia, execution by firing squad would not significantly reduce a substantial risk of severe pain. Smith points to Utah's redacted protocol but offered little-to-no supporting evidence, including no testimony at the hearing. The pertinent part of his expert's declaration is quoted in full at DE69:37-38. For "a few seconds," Dr. Groner described, Smith would feel the pain of "bullets [] tear[ing] open the heart causing immediate loss of the pumping function" and ultimately stopping "blood flow to the brain." *Id*. In comparison, nitrogen hypoxia is painless by design. If the Court considers the remote possibilities of pain under the

17

Protocol, it must compare apples-to-apples and consider, for example, the pain of being shot if the firing squad misses or the inmate moves. Smith did not show this "relatively uncommon and archaic" method (DE69:17) has "documented advantages" over nitrogen hypoxia, *Baze v. Rees,* 553 U.S. 35, 52 (2008).

* * *

For each of his proposals, Smith can succeed only if he shows the State lacks "a legitimate penological reason" for refusing them—in other words, if the State chooses pain for the sake of pain. *Bucklew*, 139 S. Ct. at 1125. In addition to the evidence discussed above, the State has penological reasons to seek "more humane methods," *Glossip*, 576 U.S. at 892, and methods that "preserv[e] the dignity of the procedure," *Baze*, 553 U.S. at 57. Smith may disagree with the State's reasons or believe they should be outweighed by other concerns, but they are nonetheless legitimate penological reasons.

## C.    Smith Failed to Show That the State's Method is Deliberately Designed to Inflict Pain.

Because the prisoners in *Bucklew*, *Glossip*, and *Baze* failed to satisfy the standards set forth above, the Supreme Court has not had reason to consider whether "establishing cruelty consistent with the Eighth Amendment's original meaning demands slightly more." *Bucklew*, 139 S. Ct. at 1125. If the Court determines that Smith is likely to succeed under the *Bucklew-Glossip-Baze* test, then it should apply the original meaning of the Eighth Amendment and ask whether Smith also showed

18

that the Protocol was *deliberately designed* to inflict pain. As originally understood, the Eighth Amendment's "primary concern … was to proscribe tortures and other barbarous methods of punishment," *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (cleaned up). Smith is thus unlikely to succeed for the additional reason that the Protocol is not deliberately designed to inflict unnecessary pain.

## III.    Smith's RLUIPA and ARFA Claims Fail.

Under the Protocol, Smith will be masked when he enters the execution chamber. Br.46. He claims that the mask will interfere with his religious exercise of praying aloud before he dies. It will not. The district court correctly denied injunctive relief based on Smith's claims under RLUIPA and ARFA.

Smith's motion asserts he is likely to succeed on his RLUIPA and ARFA claims because the district court clearly erred in finding that Smith's concerns about the Protocol are "speculative." Mot.19. But the district court's findings are supported by ample evidence.

Smith alleged that audible prayer would cause the State's mask to become dislodged such that dangerous amounts of oxygen would enter the mask and likely cause serious injury to Smith. But the district court correctly concluded that this concern was "not based on any evidence," and was "untethered from the mask that will be used." DE69:46. Smith "provided little-to-no-actual evidence," while the State "provided substantial evidence." *Id.* The State "provided numerous videos

showing multiple individuals on the execution gurney in the execution chamber speaking while wearing the mask without any problem" and an affidavit from an ADOC employee who had "observed the mask in use in conditions closely replicating those that will take place during the execution" in which those wearing the mask could "speak audibly without dislodging [it]." DE69:46. Her testimony was corroborated by six volunteers, Dr. Nitschke, DE62-112:42:16-17, 44:1-3, and Dr. Antognini, DE62-60:12-13, 15. Every person to wear the mask has found that its seal was not broken by facial movements or talking. And the court *itself* examined the mask before finding that it is "highly unlikely" any prayer would dislodge the mask. DE69:41, 9 n.3. In full view of the evidence, that finding was not clearly erroneous.

Smith thus failed to carry his burden under RLIUPA of proving that Defendants will place "a substantial burden" on his "religious exercise." 42 U.S.C.A. §2000cc-1. A substantial burden is "akin to significant pressure which directly coerces the religious adherent to conform his or her behavior." *Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama*, 980 F.3d 821, 831 (11th Cir. 2020) (cleaned up). Smith's evidentiary failures mean he cannot show any actual adverse consequence for engaging in religion—any pressure that "tends to force" him to compromise his beliefs. *Id.* at 831; *see DeMoss v. Crain*, 636 F.3d 145, 155 (5th Cir. 2011). Smith's claim also fails because the execution team will check the mask

placement after Smith makes his last statement and after the designated time with his spiritual advisor. DE62-3:X.A.v.

Because Smith offers no more than speculation, any pressure he feels is self-imposed. But RLUIPA only bars the "government" from "impos[ing]" substantial burdens on religious exercise. 42 U.S.C.A. §2000cc; *see Thai Meditation Ass'n*, 980 F.3d at 832 (asking whether the burden "is properly attributable to the government" or "self-imposed."); *Wright v. Lassiter*, 921 F.3d 413, 419 (4th Cir. 2019).

Smith's ARFA claim fails for the same reason and one more. First, Smith has not "clearly shown that there is likely to be *any* burden on his ability to audibly pray during his execution," DE69:47. The "evidence presented strongly shows the opposite." *Id.* Second, "federal courts do not have the authority to compel state actors to comply with state law." *Doe v. Bush*, 261 F.3d 1037, 1055 (11th Cir. 2001).

## IV.    The Equitable Factors Favor the State.

Smith's arguments on the equities fail. He says that "the public has an interest in ensuring the State has researched" nitrogen hypoxia "adequately and established procedures to minimize the pain and suffering of the condemned person." Mot.20. But that is merely an attempt to shift to the State the burdens Smith bears under both substantive law and as the party requesting extraordinary injunctive relief to show that his rights are likely to be violated. The district court's thorough findings show that Smith failed to bear these burdens. *See, e.g.*, DE69:41-47.

Moreover, Smith challenges the very method of execution that he doggedly asked for—right up to the moment that he finally got it. Smith had every opportunity in prior litigation to specify the method he wanted. Instead, he waited and then launched this lawsuit.

Finally, any court-ordered "delay" of Smith's sentence is, "for its span, … a commutation of a death sentence." *Thompson*, 714 F.2d at 1506. "Both the State and the victims of crime have an important interest in the timely enforcement of" Smith's sentence. *Bucklew*, 139 S. Ct. at 1133.

## CONCLUSION

The Court should deny Smith's stay application.


Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr.
  *Solicitor General*

Robert M. Overing
  *Deputy Solicitor General*

Dylan Mauldin
  *Ass't Solicitor General*

Richard D. Anderson
Beth Hughes
Polly Kenny
Henry Johnson
John Hensley
Jordan Shelton
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
501 Washington Ave.
Montgomery, AL 36130
(334) 242-7300
Edmund.LaCour@AlabamaAG.gov

January 17, 2024

*Counsel for Appellees*

22

**CERTIFICATE OF COMPLIANCE**

1.       I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 27(d)(2)(A). This brief contains 5,129 words, including all headings, footnotes, and quotations, and excluding the parts of the response exempted under Fed. R. App. P. 32(f).

2.       In addition, this response complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Appellees*

Dated: January 17, 2024

**CERTIFICATE OF SERVICE**

I certify that on January 17, 2024, I electronically filed this document using

the Court's CM/ECF system, which will serve counsel of record.


s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Appellees*