No. 24-10095-P (Capital Case)

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

_____

KENNETH EUGENE SMITH,

Plaintiff-Appellant,

v.

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS, and WARDEN, HOLMAN CORRECTIONAL FACILITY,

Defendants-Appellees.

_____

On Appeal from the United States District Court for the Middle District of Alabama (Northern Division) No. 2:23-cv-00656 (Hon. R. Austin Huffaker, Jr.)

_____

**PLAINTIFF-APPELLANT KENNETH SMITH'S RENEWED EMERGENCY MOTION FOR STAY OF EXECUTION**[1]

_____

| | |
|---|---|
| Robert M. Grass | Andrew B. Johnson |
| **ARNOLD & PORTER KAYE SCHOLER LLP** | **BRADLEY ARANT BOULT CUMMINGS LLP** |
| 250 West 55th Street | 1819 Fifth Avenue North |
| New York, NY 10019-9710 | Birmingham, AL 35103-2104 |
| Telephone: 212-836-8000 | Telephone: 205-521-8000 |
| Facsimile: 212-636-8689 | Facsimile: 205-521-8800 |
| robert.grass@arnoldporter.com | ajohnson@bradley.com |

*Counsel for Plaintiff-Appellant Kenneth Eugene Smith*

---

[1] The "time frame" for Mr. Smith's execution begins at 12:00 a.m. on January 25, 2024. Pursuant to Eleventh Circuit R. 27-1(b)(2), Mr. Smith requests that the Court rule as soon as reasonably possible.

**Appeal No. 24-10095-P**

**CERTIFICATE OF INTERESTED PERSONS**

Undersigned counsel certify that the following persons may have an interest in the outcome of this case:

1. Alverson, Gary W. - Counsel for the State of Alabama at trial;

2. Anderson, Kathryn D. - Counsel for the State of Alabama on direct appeal;

3. Anderson, Richard D. - Counsel for the Respondents during federal habeas proceedings and for Defendants-Appellees below;

4. Bahakel, Alfred - Retired Circuit Judge of Jefferson County

5. Bearden, Joshua S. - Counsel for the State of Alabama during Rule 32 proceedings;

6. Burkett, Ashley - Counsel for Mr. Smith;

7. Ciliberti, Angelique A. - Counsel for Mr. Smith;

8. Dunn, Jefferson S. - Former Commissioner of the Alabama Department of Corrections;

9. Forrester, Nathan A. - Counsel for the State of Alabama on direct appeal;

10. Grass, Robert M. - Counsel for Mr. Smith

11. Hamm, John Q. - Commissioner of the Alabama Department of Corrections and Defendant-Appellee;

12. Hammonds, Tina Coker - Counsel for the State of Alabama during Rule 32 proceedings and for Respondents during federal habeas proceedings;

13. Hensley III, John Coleman - Counsel for Defendants-Appellees below;

14. Horowitz, Jeffrey H. - Counsel for Mr. Smith;

C-1

15. Huffaker, Jr., The Honorable R. Austin - United States District Judge for the Middle District of Alabama;

16. Hughes, Beth Jackson - Counsel for the State of Alabama on direct appeal and for Defendants-Appellees below;

17. Johnson, Andrew B. - Counsel for Mr. Smith;

18. Johnson, Christopher M. - Counsel for Mr. Smith at trial;

19. Johnson, Henry M. - Counsel for the State of Alabama on direct appeal and for Defendants-Appellees below;

20. Kallon, Abdul K. - Retired United States District Judge for the Northern District of Alabama;

21. Kenny, Polly Spencer - Counsel for Defendants-Appellees below;

22. Kerschner, David A. - Counsel for Mr. Smith;

23. King, Troy - Former Alabama Attorney General;

24. Marshall, Steve - Alabama Attorney General;

25. Martin, George - Counsel for the State of Alabama on direct appeal;

26. Monk III, Richard H. - Counsel for Mr. Smith during Rule 32 proceedings;

27. Newsom, The Honorable Kevin C. - Former Alabama Solicitor General;

28. Norby, Charlotta - Counsel for Mr. Smith at trial and on direct appeal;

29. Nunnelly, Michael A. - Counsel for the State of Alabama during Rule 32 proceedings;

30. Parker, John Forrest - Co-Defendant;

31. Pryor, Jr., The Honorable William H. - Former Alabama Attorney General;

32. Raybon, Terry – Warden, William C. Holman Correctional Facility and Defendant-Appellee;

33. Samberg, Peter - Counsel for Mr. Smith during Rule 32 proceedings;

34. Sennett, Charles - Co-Defendant;

35. Sennett, Elizabeth Dorlene - Victim;

36. Sharp, Jr., William G. - Former Commissioner of the Alabama Department of Corrections;

37. Shelton, Jordan Shay - Counsel for Defendants-Appellees below;

38. Singleton, Palmer - Counsel for Mr. Smith at trial and on direct appeal;

39. Smith, Kenneth Eugene - Plaintiff-Appellant;

40. Tompkins, The Honorable N. Pride - Retired Circuit Judge of Colbert County;

41. Williams, Billy Gray - Co-Defendant.

No publicly traded company or corporation has an interest in the outcome of this appeal.

In light of the district court's ruling following limited remand to consider supplementing the record, as well as Defendants' submission of additional evidence to the district court on January 23, 2024, Mr. Smith renews his emergency motion for a stay of execution for the reasons that follow.

## **INTRODUCTION**

On the evening of January 23, 2024—just two days before it plans to attempt the world's first execution by nitrogen hypoxia—the Alabama Department of Corrections (ADOC) made an eleventh-hour change to its plan for carrying it out. It made that change in response to new evidence that Mr. Smith has been vomiting repeatedly, as shown in ADOC's own medical records—a likely result of the post-traumatic stress disorder (PTSD) from which Mr. Smith suffers as a result of ADOC's previous failed attempt to execute him. *See* DE 87-1 ¶ 3; DE 87-2 ¶ 2; DE 87-3; DE 87-4 ¶ 4; DE 87-5 ¶ 7.[2] Notably, ADOC does not dispute the facts reported by Mr. Smith about his vomiting, which were documented by ADOC prison staff. *See* DE 86. Nor could they reasonably do so, as their own medical staff has treated Mr. Smith for his condition by prescribing antiemetic (*i.e.*, anti-nausea) medication, which Mr. Smith reports still has not been effective to stop his vomiting. *See* DE 87-2 ¶ 2; DE 87-3.

---

[2] "DE" citations are to entries on the District Court's docket in this case. "Doc." citations are to documents filed with this Court.

1

In response to the significant risk of vomiting demonstrated by that evidence, Defendants have simply made a last-minute change to their execution plans. Defendant Terry Raybon, the warden of Holman Correctional Facility, announced that change via a declaration submitted to the district court yesterday evening wherein he states that "it was determined that the schedule for Smith's final meal will be altered" such that Mr. Smith "will not be allowed any solid food after 10:00 a.m.," and he will only be "allowed clear liquids up until 4:00 p.m.," with the execution scheduled to "begin no sooner than 6:00 p.m." DE 86-1 ¶ 2. Defendants' new eleventh-hour plan therefore means that Mr. Smith will be deprived of any food for at least eight hours before his execution. Given that the "timeframe" for his execution extends until 6:00 a.m. on Friday, January 26, that period could be many hours longer. In addition to the new constitutional issues presented by this new change, it will be ineffective in any event. *See* DE 87 at 6; Doc. 16 at 17–18; *see also infra* at Argument Section II.

ADOC's latest change is yet another shift of the constantly moving target that is Alabama's nitrogen hypoxia protocol. During ADOC's years-long delay in developing its protocol, its representatives told courts of the "difficult process to develop the first in the nation protocol" because they could not "go take something off the shelf." *Smith v. Hamm*, 2:22-cv-00497, DE 32 at 41:14–42:8. And yet, on the eve of being required to respond to discovery in Mr. Smith's then-pending

2

litigation about its failed lethal injection attempt, Doc. 16 at 6–7, 29–30, it released to the public and Mr. Smith a Protocol outlining procedures that it now vehemently asserts are mostly "common sense." *See, e.g.,* DE 62-33 at 81:2-14; 84:20-85:5; 147:23-148:8; 175:4-12; 217:2-10. And now, in response to evidence showing a real and significant risk of Mr. Smith vomiting during the execution, ADOC has chosen to change its plans so that Mr. Smith is deprived of food instead of employing feasible and readily available alternatives that would actually reduce the risk of Mr. Smith choking on his own vomit, such as a hood instead of a mask. ADOC is seemingly making up its protocol as it goes along for this obviously novel and experimental execution method.

And while there is no doubt that a stay of execution is the exception and not the rule, it is difficult to imagine a more exceptional case than one in which a State intends to employ a novel protocol for a never-before-used method of execution, using a plan that continues to shift less than 48 hours before the execution is scheduled to begin. Mr. Smith (not to mention the public at large) has a strong interest in ensuring that the State's planned execution does not subject him to cruelty in violation of the Eighth Amendment, particularly when Mr. Smith has already been subjected to such cruelty in a previous failed execution attempt. The equities weigh strongly in favor of a stay because of the compelling need to ensure that ADOC gets

3

it right this time, and because Mr. Smith has shown a likelihood of success on the merits.

## STANDARD

A stay of execution is appropriate where the plaintiff can demonstrate that "(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." *Price v. Comm'r, Dept. Corr.*, 920 F.3d 1317, 1323 (11th Cir. 2019) (emphasis removed).

## ARGUMENT

### I. MR. SMITH IS LIKELY TO SUCCEED ON THE MERITS OF HIS EIGHTH AMENDMENT CLAIM.

The new evidence related to Mr. Smith's continuous vomiting, which has not been alleviated by medication prescribed by ADOC for that purpose, further shows not only that Mr. Smith is presently vomiting enough to be prescribed medication but also faces a serious and substantial risk of vomiting during the execution. The district court clearly erred in concluding that Mr. Smith's new evidence "does not change this court's previous factual findings or conclusions of law." DE 88 at 4.

The district court's factual findings based on the record as supplemented are clearly erroneous. First, the district court found that Mr. "Smith's purported

4

vomiting is based entirely on his own personal reports," which "have not been corroborated by anyone else." DE 88 at 2; *see also id.* at 3 (referring to Mr. "Smith's uncorroborated self-reports"). But the medical records produced by the Holman Correctional Facility corroborate Mr. Smith's self-reporting. The medical staff at Holman are treating Mr. Smith for nausea and vomiting and have prescribed medicine to treat his symptoms, which has been unsuccessful for that purpose. *See* DE 87-3; 87-4 at 5–16 (Exhibit A). In addition, *Defendants* have custody of Mr. Smith. If they want to corroborate Mr. Smith's self-reporting, they have the means to do that. And they have not disputed Mr. Smith's self-reports. *See* DE 86.

What is more, *Defendants* placed Mr. Smith on "single walk" status, which means he is isolated from other condemned people at Holman, which complicates his ability to visit with family and his counsel. *See* DE 67 at 129:18–131:12. Thus, Defendants' action makes it highly unlikely that Mr. Smith would vomit in front of eyewitnesses other than ADOC personnel who are under the control of Defendants.

The district court's finding that Defendants' last-minute workaround—depriving Mr. Smith of solid food after 10 a.m. and liquid nourishment after 4 p.m. on the day of his planned execution—will adequately address the risk of asphyxiation from vomiting into the mask also is clearly erroneous. Defendants are taking a medical procedure—a nothing-by-mouth order before scheduled surgery—and applying it outside its context. In the context of Mr. Smith's execution,

5

Defendants' belated amendment to the Protocol is part of the Eighth Amendment issue—not a solution to it.[3]

There is a reason scheduled surgeries that entail nothing by mouth orders generally occur in the morning. The patient can eat the evening before, sleep, and then be taken for surgery. Here, Defendants propose to deprive Mr. Smith of food for eight hours during the day, thereby significantly extending his ordeal, before exposing him to substantial risks of asphyxiation due to vomiting and other dire consequences from their failure to do any testing to ensure that the mask is airtight.

Furthermore, after reviewing the new medical records produced on January 21, 2024, Dr. Porterfield stated, "it is my opinion to a reasonable degree of clinical certainty that there is a substantial and serious risk that Mr. Smith will experience nausea and vomiting during his execution, due to his condition of PTSD and his ongoing, worsening symptoms of nausea and vomiting seen over the last four weeks. ***This creates a significant risk that Mr. Smith will suffer substantial harm, including but not limited to asphyxiating—that is, choking to death—on his own vomit***." DE 87-5 ¶ 7 (emphasis added).

---

[3] To the extent the district court concluded that Mr. Smith requested that a nothing-by-mouth order be added to the protocol or that such an order would be sufficient to address the risk of choking on his own vomit during the execution, that is incorrect. Defendants first raised nothing-by-mouth orders in their cross-examination of Dr. Yong. *See, e.g.*, DE 67 at 69:12–19; 78:15–79:2; 162:6–13.

Defendants' plan exacerbates the Eighth Amendment issues here. "Because depriving a prisoner of adequate food is a form of corporal punishment, the eighth amendment imposes limits on prison officials' power to so deprive a prisoner." *Cooper v. Sheriff, Lubbock Cty., Tex.*, 929 F.2d 1078, 1083 (5th Cir. 1991); *see also Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. (2015) ("[P]rison officials violate an inmate's Eighth Amendment rights when they deprive her of 'a single identifiable human need such as food warmth, or exercise.'" (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). What is more, Defendants' plan could deprive Mr. Smith of any liquids at all for up to 14 hours, an even more serious problem than food deprivation. In the medical context, for example, individuals undergoing a procedure after a nothing by mouth order receive IV fluids to prevent dehydration.

Defendants' plan to require Mr. Smith to fast for at least 8 hours before his planned execution merely confirms that Defendants are ill-prepared to carry out Mr. Smith's execution tomorrow. Defendants are inadequately prepared to address Mr. Smith's PTSD, which Defendants caused by their failed attempt to execute him in November 2022. Predictably, as Dr. Porterfield testified, Mr. Smith's symptoms, including nausea and vomiting, are becoming increasingly severe as his execution approaches. *See* DE 62-54 at 3 ("It is my clinical opinion that the current plan of execution and the possibility of having to again face these procedures is completely

7

terrifying for Mr. Smith and leading to ongoing deterioration."); *id.* at 30 ("The new execution date set for Mr. Smith will begin a process of reexperiencing of reminders and details that are sure to be highly triggering for Mr. Smith."). Now Defendants propose to address that by depriving Mr. Smith of food and water, which will increase his anxiety and other PTSD-associated symptoms. Defendants' last-minute workaround further demonstrates that permitting Defendants to attempt to execute Mr. Smith tomorrow would violate his right to be free from cruel and unusual punishment.

In addition, the district court's findings are based on the clearly erroneous premise that the only issue is whether Mr. Smith vomits "precisely between the time nitrogen begins to flow and before he reaches unconsciousness." DE 89 at 3. That unsupported notion is contradicted by the existing record both because it assumes that the mask that Defendants will place over Mr. Smith's face will be adequately sealed[4] and airtight, and because it is undisputed that Defendants' plan to use a finger sweep to clear vomit from Mr. Smith's mouth and airway while breathing air is delivered to him is inadequate, as suction is required for that purpose. *See* Gray Br.

---

[4] Defendants' assurance that "Smith will be unconscious in one minute," Doc. 48 at 11, assumes that the mask it intends to place on Mr. Smith's face will be sealed and airtight even though Defendants do not intend to follow the guidance of the mask manufacturer, which the district court ignored, and do any test to ensure that is the case. *See* Blue Br. 35–36.

8

17–18. Defendants will not do anything to address vomiting once nitrogen is supplied to Mr. Smith; he will be left to choke on his own vomit. *See* Blue Br. 40.

Moreover, as Dr. Antognini testified, even after a person loses consciousness, "[y]ou can get passive regurgitation, which can go up into the airway – into the mouth and into the airway." DE 67 at 162:21–23. And Defendants will not do anything to prevent the risk of asphyxiation when nitrogen is being supplied to Mr. Smith; they will let him choke on his own vomit. *See* Blue Br. 40. Thus, Mr. Smith will be at risk of asphyxiation due to vomiting from the time he is taken to the execution chamber when the mask is placed on his face, DE 62-3 at § X.A.v until the procedure concludes, which can be an indefinite period of time because nitrogen "will be administered for (1) fifteen minutes or (2) five minutes following a flatline indication on the EKG, *whichever is longer*." DE 62-3 at § X.A.xv (emphasis added); *see also* DE 67 at 101:1-102:17.

## II. THE EQUITIES FAVOR A STAY.

In addition to the considerations discussed in Mr. Smith's initial Emergency Motion to Stay Execution, Doc. 15, additional factors further support Mr. Smith's request for a stay. The State does not meaningfully dispute Mr. Smith's assertion that he has been vomiting. *See* DE 86. Indeed, it cannot. ADOC's own medical staff has recorded those symptoms in his medical records and have prescribed him medication for those symptoms (which is not working). *See* DE 87-3; 87-4 at 5–16

9

(Exhibit A). Moreover, Defendant Raybon has now changed the execution plan in response to Mr. Smith's deteriorating health. *See* DE 86-1. The district court thus clearly erred in stating that Mr. Smith's vomiting is only "self-reported." But ADOC's eleventh-hour attempt to change its plan also presents other issues that should receive full and fair consideration.

First, the changes outlined in Defendant Raybon's declaration are completely inadequate to address the range and severity of symptoms that Mr. Smith faces because of his PTSD. This change is premised on an incorrect assumption that a food and liquid restriction will minimize the likelihood of Mr. Smith vomiting. But "nothing-by-mouth orders" do not eliminate the risk of vomiting. And Mr. Smith has not received adequate treatment for his PTSD; it has in fact worsened over the last several months, with him reporting increased nausea, anxiety, sleeplessness, flashbacks, and vomiting. DE 87-5 ¶ 6–7. Even with the changes proposed by Defendant Raybon, Mr. Smith faces a substantial and real risk of vomiting.

Second, although Defendant Raybon's declaration states that the execution "will begin no sooner than 6:00 p.m.," it says nothing about what will happen if Mr. Smith's execution is delayed either by ongoing litigation or from issues that arise when carrying out the execution. *See* DE 86-1 ¶ 2. Moreover, Governor Ivey has set a thirty-hour time frame for the execution to occur beginning at 12:00 a.m. on Thursday, January 25, 2024, and expiring at 6:00 a.m. on Friday, January 26, 2024.

10

DE 31 ¶ 73. It is therefore possible that Mr. Smith will have to go without food for 20 hours and without liquids for 14 hours. That in and of itself raises new constitutional questions that deserve to be considered. *See, e.g.*, *Cooper*, 929 F.2d at 1083 ("Because depriving a prisoner of adequate food is a form of corporal punishment, the eighth amendment imposes limits on prison officials' power to so deprive a prisoner.").

Defendant Raybon's declaration underscores what Mr. Smith has been arguing from the outset. ADOC has haphazardly assembled a new execution protocol that has not been adequately tested, and its plan for the execution continues to change less than 48 hours before the execution. The issues raised in Mr. Smith's complaint are meritorious, have been diligently pursued, and deserve to be considered fully and fairly. As explained more fully in Mr. Smith's initial Emergency Motion to Stay the Execution, the exigent nature of this appeal is of ADOC's own doing. Doc. 15 at 2. It should not be rewarded with a free pass to use Mr. Smith as its test subject for its woefully deficient Protocol.

## **CONCLUSION**

The Court should stay the scheduled execution until such time as Mr. Smith's claims—which raise important questions about a novel method-of-execution and how Mr. Smith was chosen as the test subject for the State's new Protocol—are fully adjudicated.

/s/ *Andrew B. Johnson*
Andrew B. Johnson
**BRADLEY ARANT BOULT
 CUMMINGS LLP**
1819 Fifth Avenue North
Birmingham, AL 35103-2104
Telephone:  205-521-8000
Facsimile:  205-521-8800
ajohnson@bradley.com

Robert M. Grass
**ARNOLD & PORTER KAYE
 SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone:  212-836-8000
Facsimile:  212-836-8689
robert.grass@arnoldporter.com

Ashley Burkett
**ARNOLD & PORTER KAYE
 SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone:  202-942-5000
Facsimile:  202-942-5999
ashley.burkett@arnoldporter.com

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume litigation of Fed. R. App. P. 27. This motion contains 2,743 words, excluding the parts of the motion exempted. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word, in 14-point Times New Roman font.

*/s/ Andrew B. Johnson*
Andrew B. Johnson

Dated: January 24, 2024

## CERTIFICATE OF SERVICE

I certify that, on January 24, 2024, I filed Plaintiff-Appellant Kenneth Smith's Emergency Motion for Stay of Execution with the Clerk of the Court using the NextGen CM/ECF system, which will automatically send email notification to all counsel of record.

*/s/ Andrew B. Johnson*
Andrew B. Johnson

Dated:  January 24, 2024